Mr. Justice Hagner
delivered the opinion of the Court :
This is an action of ejectment instituted by Patch against White to'recover two undivided third parts of lot No. 3, in square 406, in the city of Washington. At the trial, the plaintiff, to maintain his action, offered in evidence a deed to himself in 1873, from Brereton, one from the heirs of Sewell to Brereton in 1851, and a deed to Sewell from Henry Walker, bearing date 1842. Each of these deeds purported to convey the entire title to lot No. 3. To prove title to the property in Henry Walker, the plaintiff then offered in evidence the will of James Walker, dated September 17, 1832, and duly admitted to probate. In this will, after a devise of one-third of his real estate to his widow for life, with a remainder to his infant son, James Walker, the testator, devised the lot of ground in controversy as follows:
“ I bequeath and give to my dearly beloved brother, Henry *469 Walker, forever, lot No. 6, in square 403, together with the improvements thereon erected and appurtenances thereto belonging.”
The testator did not own the lot herein described, but the plain tiff offered evidence which he insisted, if admitted, would enable the court to say that this clause should be con-I sidered as in fact a devise of lot No. 3 in square 406. The pafol evidence that was proposed to be given was, first, that the testator, James Walker, intended to leave all his land and everything he had to his brothers and sisters; secondly, that he did notown lot 6 in square 403, and that he did own lot 3 in square 406, which was in the same general system of lots, all the four hundred series running down in the same straight line through that part of the city; that the lot designated in the will had no improvements upon it, whereas lot 3 in square 406, mentioned in the declaration, was improved, (and the lot devised is, in the clause just ^.quoted, described as an improved lot). He then offered to prove that, since the will wTas admitted to probate, Mrs. Walker, who had a life estate in one-third of all the property, had continued to draw one-third of the rents, issues and profits of the lot named in the declaration, that is to say, of lot 3 in square 406, and that the guardian of Henry Walker, during his minority, had drawn the other two-thirds of the rents of that lot, and that all the beneficiaries, the people.named in the will, had acquiesced in this, going to show the proper reading of that clause, as understood by those directly interested.
The question is, whether this evidence is admissible or not. It is not improbable that this may have been a case of mis-description thi’ough a blunder of the testator, or his scrivener, confusing the numbers of the lot and the square by a sort of jingle. He seems originally in his description of his land to have made other blunders in the will. Thus, he gave his son, James Walker, “ lot number 22, in square number three two. hundred an d twenty, fifty-two.” This was a very strange blunder; in fact, he seems to have been a man very likely to blunder, but it is to ,bu observed that this last one he cor- *470 reeted, and it may be argued tbat be would have corrected the first one if he had made it as well as the last, and that he might have intended to buy this piece of land before he died. The difficulty in these cases arises from the application of the rules governing the subject, the rules themselves being pretty plain. And, first, it is to be observed that this is not a suit seeking the aid of words not written. At the same time, however, a court of law, though precluded from ascribing to the testator any intention not expressed in his will, admit their obligation to give effect to every intention which the will, properly expounded, contains. The answer, therefore, to the question above proposed — enjoined as well as sanctioned by the general principles above mentioned— must be, that any evidence is admissible which, in its nature and effect, merely explained what the testator has written ; but no evidence can be admissible which, in its nature or effect, is applicable to the purpose of showing merely what he intended to have written.”
The case of Walton against White, in 5 Maryland, page 297, was a case of a devise of lands which were described as being “on the south side of Beaver Dam Branch,” and the court says: “The question in expounding a will is not what the testator meant, as distinguished from what his words express, but simply what is the meaning of the words,” and they admitted evidence to show the true location of the branch. The principle is confirmed, almost in the same words, in the case of Hammond vs. Hammond, 55 Maryland, page 576. But, indeed, there is a perfect flood of cases, and multitudes were cited in the argument. We think, however, that the decision of the courts in the principal cases would not admit such testimony as is sought to be introduced here. Of citing cases there is no end, but it is to be observed that many of them are early cases before the statute, and are, therefore, not reliable. Such is the opinion of Redfield, Jarmen, and other text-book writers; and among those cited as being before the statute are the cases from Ambler and from Coke’s reports. All these are, therefore, not safe guides, because, unquestionably, the statute *471 was intended to prevent the latitude of evidence which had hitherto prevailed. On page 115 (margin) of Wigram, it is said: “The principle (if any) upon which the excepted cases, taking them collectively, are founded, is by no means obvious and further down, on page 116, he says : “How can the statute, which makes a writing indispensable, be satisfied, if the thing which is the subject of disposition, or the person who claims the benefit of it, is not described in that writing with certainty sufficient to enable the court, by the description in the writing, to determine their iden-' tit-y?” In the case of Beaumont against Pell (2 Pierre Williams), the Master of the Polls, although he admitted the parol evidence, said : “ If this had been a grant — nay, had it been a devise — of land, in equity, where ‘ the conscience of the heir may be affected,’ in the language of the courts, ‘ if he shall insist upon the literal interpretation of a devise against the meaning well known to himself to have been intended by the testator.’ Naturally, under such circumstances, a court of equity might be more inclined to consider the offer of such evidence than a court of law in a dry legal action like an ejectment, which is governed by technical rules. By the Statute of Maryland of 1798, ch. 101, all devises of any land, &c., shall be in writing, signed by the party devising the same, or by some other person in his presence, and by his express direction, and attested and subscribed to in the presence of the testator by three or four credible witnesses, or else it shall be utterly void, and of none effect. This clause is a literal transcript of the provision in the Statute of Frauds and Perjuries, 29 Charles II, ch. 3. Now, what was the state of the law before this statute? In Wigram on Wills, page 5, author’s edition, it is thus laid down : “ It was holden before the statute that parol evidence was, in certain cases, admissible to determine the person or thing intended, where the description in the instrument was insufficient for that purpose ; as in a devise to A B, where there were two persons of the same name, or a devise of the manor of Hale, where the testator had two manors of that name; North Hale and South Hale, in which *472 cases parol evidence of witnesses wbo spoke to the testator’s intention was admissible to determine which of the two persons named respectively A B, or which of the manors of Dale was intended by the testator. That is to say where the identity of the person or thing intended by the testator-has been-the only point in dispute, and the description in the will has been insufficient to determine it.” And„ further down, he says: “ The courts have uniformly professed to be governed by the admitted principle, that, the: judgment of a court in expounding a will should be merely, decla-tory of what is in the instrument. This was the general rule-, at common law before the statute, and if the statute-, has not strengthened its obligations, it certainly has not; relaxed them,” and, as to the effect of the statute, the; author states that it, “ by requiring a will to be in writing,, precludes a court of law from ascribing to a testator any intention which his written will does not express, and, in effect, makes the writing the only legitimate evidence of' the testator’s intention. No will is within the statute; but that which is in writing, which is as much as to say that all that is effectual to the purpose must be in writing, without. it had been void by reason of the mistake both of the Christian and surname ; but where is. the distinction between a grant and a devise of land for-the purpose under consideration?” This case was one where “Gertrude Yardley” was held entitled to a legacy which was, given .by the will to “Catherine Earnley.” Again, on page 180, Wigram says: “The decisions, then, in the exceptedi cases must, it is conceived, be considered to a great extent: as arbitrary, and not to be explained upon any determined, principle. They appear to be decisions in which the general principle has been sacrificed to meet the hardship of particular cases.” One of the principal cases involving the admission of parol testimony to explain what the testator meant, is the celebrated case of Goblet vs. Beechey, reported in 3 Simon, page 24. It is well known that the origin of Mr-Wigram’s book was in his criticisms on that case, where the Master of the Rolls allowed! parol, evidence to explain what, *473 was meant by a provision in the will. This ruling, however, was reversed by Lord Chancellor Brougham. After the decision in Goblet vs. Beechey, came the case of Miller vs. Traverse, in 8 Bingham. In that case the testator devised in a particular way all his estates in the county of Limerick and the city of Limerick. It appeared that the testator possessed estates in the- city of Limerick, but none in the county, but that he had large possessions in the county of Clare, and the offer was made to prove that, in the original draft of his will, the devise had been of all his lands in the county of Clare and the city of Limerick, and that, by a blunder of the scrivener, the county of Limerick had been inserted for the county of Clare. This case was heard, on appeal, by Lord Lyndhurst and Lord Chief-Justice Tindal, among other judges, and their opinions were delivered at great length and after mature examination, and it was there held unanimously by the judges that such evidence was inadmissible. In 18 Howard (see, also, 11 Wharton), in the case of Watkins against Allen, this case of Miller vs. Traverse is adopted by the Supreme Court of the United States as expressing the correct position on the subject. The testator in the present case does not say that his property was in the city of Washington, and it cannot be doubted that parol evidence to that extent would be admissible by way of identifying the property named by him in the will, but the argument is that we can go further than this and correct the numbers as given for square and lot.
Now, the applicable cases seem to be confined to instances of what Lord Bacon calls “ equivocation ” in a will, recognizing the principle as laid down by him that parol evidence was admissible “ where the persons or things may be equally designated by the same description,” or where there is a description plain enough as to one part in the will and equivocal as to the other, the equivocal part may be rejected if enough remains to let us see what the testator really intended to express, or portions of the description may be rejected, provided there is something left certain, as if a man, on writing his will on the back of a deed, should say, “ I give *474 the piece of land conveyed to me by the within deed containing 100 acres, lying in the county of Dale,” &c., he may have number of acres wrong, he may have the county wrong, and he may have the position wrong, and the name may be incorrect, and yet such a devise may be sustained, because a sufficient description of the property intended is evinced by his declaration that it is the property conveyed by the deed that is pointed out in the will — in other words, one thing may be incorrect and be' corrected by another, if there is anything to correct it by. In the case of Wilkins et al. vs. Allen, 18 Howard, page 285, the whole matter is decided on the strength of this English decision.
Now, applying these principles here, what can we do with the devise of this lot? The will says, “ lot 6, in square 403,” and it is said that ought to be read lot 3 in square 406. The first thing to do then is to strike out the number of the lot and then to strike out the number of the square. What then remains? Nothing on earth but these “improvements.” It is manifest that this will was not drawn by a lawyer ; it jumbles “improvements” and appurtenances together, and leaves out words of limitation, and makes other blunders all the way through, and to admit parol testimony to give effect to the blunders of this man is to do the very thing which the statute was designed to prevent. The recent important cases seem to be within the principle I have just enunciated. For instance, a New Hampshire case where the property was described wrongly, but was identified as “ the piece I bought of A ;” a case reported in 2 Washington’s Reports, where “ a lot on Fourth street in the occupation of A and B,” was held to pass a lot on Third street in the occupation of the persons named; a case in Indiana, where the northeast quarter of a township was devised and the northwest quarter was held to pass, the rest of the description being there sufficient; the case in 20 Missouri, on page 239, where the sections devised were right, but the township wrong, and the property was identified in the will by it saccessibility to the “ Big Spring ;” the case of Fitzpatrick vs. Fitzpatrick, in 36 Iowa, where the testatrix de *475 vised the west half of the northeast quarter, which\she did not own, instead of the east half of the southwest quarter, which was her property, and where the plaintiff offered proof that a similar mistake to that insisted on in the ease of Miller vs. Traverse had occurred, and to prove by the scrivener that^the description originally given to him was the correct one, but the offer of parol proof was rejected. In thejcasejof Wetheree’s Lessee vs. Bascoville,'the^circum-stances were quite touching ; a settler in the far -west, killed by Indians, while dying had at the door of his cabin dictated his will to a neighbor ; it happened that, possibly through want of familiarity with the subject, the scrivener incorrectly recited the instructions of the testator, and this fact was so evident that the heirs for many years had held the property among themselves according to the verbal directions of the testator, and against the written devises in the will. When, however, a claim was made under the language of the will, the Supreme Court held that parol evidence of what the testator directed the scrivener to write was inadmissible and that the devises, as expressed in the will were conclusive upon the l’ights of the parties. It results, in the language of the court in the ease of Jackson vs. Van Vachten, in 11 John., page 201, that “ in cases of this kind, where there is no sufficient description in the will, independent of that which is false, the devise fails for uncertainty. It would be impossible for counsel ever to advise with confidence as to a title derived under a will if, as in the present instance, after the expiration of nearly fifty years, it is admissible by parol evidence to prove that a devise of property distinctly described in the will, was in fact a devise of another portion not named in the will-and differing in location and in all other points of description, and if, under the sanction of this statute of frauds, such evidence is to be admitted, we may well, in the language of an English judge, say that its title should be changed and that it should be called “an act for the promotion of fraud and the encouragement of perjuries.”
The rulings below are affirmed.
The Chiee Justice dissented.